1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   MICHAEL BOUSKOS, individually and          No.  1:19-cv-01431-DAD-SAB
     behalf of others similarly situated,

12
                         Plaintiff,

13                                              ORDER GRANTING MOTION TO COMPEL
             v.                                 ARBITRATION AND STAYING THE
14                                              PROCEEDINGS PENDING ARBITRATION
     J.P. MORGAN CHASE BANK, N.A.,

15                                              (Doc. No. 11)
                         Defendant.

16

17

18          This matter is before the court on defendant J.P. Morgan Chase Bank, N.A.'s motion to

19   compel arbitration.  (Doc. No. 11.)  Pursuant to Local Rule 230(g), on April 20, 2020, the court

20   took this matter under submission to be decided on the papers without a hearing.  For the reasons

21   set forth below, defendant's motion to compel arbitration is granted and the proceedings are

22   stayed pending arbitration.

23                              **BACKGROUND**

24          Plaintiff Michael Bouskos was employed by defendant as a home lending advisor to

25   provide direct lending services to homebuyers.  (Doc. No. 1-1 at 7–8.)  In this proposed class

26   /////

27   /////

28   /////

                                                1

1   action, plaintiff asserts five claims[1] alleging defendant committed various violations of wage and

2   hour employment law established by California Labor Code and Industrial Welfare

3   Commission ("IWC") Wage Orders and one claim alleging that defendant violated California's

4   unfair competition law, California Business & Professions Code §§ 17200, *et seq.* (*Id.*)

5        On March 11, 2020, defendant moved to compel arbitration of plaintiff's individual

6   claims, relying on the arbitration agreement and class action waiver provision which appear in the

7   employment agreement plaintiff signed with defendant. (Doc. No. 11-3 at 12–17.) On March 31,

8   2020, plaintiff filed his opposition to the pending motion, and on April 14, 2020, defendant filed a

9   reply. (Doc. Nos. 12, 13.)

10                          **LEGAL STANDARDS**

11       The Federal Arbitration Act ("FAA") provides that any written agreement containing a

12  clause to settle a dispute through arbitration is to be considered "valid, irrevocable, and

13  enforceable, save upon such grounds as exist at law or in equity for the revocation of any

14  contract" and confers the right to obtain an order requiring arbitration proceed in the manner

15  provided for in the contract. 9 U.S.C. §§ 2, 4; *Epic Sys. Corp. v. Lewis*, __U.S.__, 138 S. Ct.

16  1612, 1621 (2018) (citing *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011)). The FAA

17  nevertheless requires a court deciding a motion to compel arbitration to determine two threshold

18  issues: (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

19  encompasses the dispute at issue. *Boardman v. Pacific Seafood Grp.*, 822 F.3d 1011, 1017 (9th

20  Cir. 2016) (citing *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir.

21  2000)).

22       If a valid arbitration agreement that encompasses the dispute at issue is found to exist,

23  arbitration is mandatory. *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002).

24  _____

25  [1] Specifically plaintiff alleges (1) failure to pay wages in violation of California Labor Code §§ 510, 1194, 1194.2, 1197, and 1198 and IWC Wage Order §§ 3 and 5; (2) failure to provide

26  meal periods in violation of California Labor Code §§ 226.7 and 512 and IWC Wage Order § 11; (3) failure to permit rest breaks in violation of California Labor Code § 226.7 and IWC Wage

27  Order § 12; (4) failure to provide accurate itemized wage statements in violation of California Labor Code § 226; (5) failure to pay all wages due upon separation of employment in violation of

28  California Labor Code §§ 201–203. (*See* Doc. No. 1-1.)

                                    2

1

**DISCUSSION**

2      Here, defendant contends that the court must compel arbitration of plaintiff's

3  employment-related claims on an individual basis because plaintiff signed an employment

4  agreement which contains both an arbitration agreement and a class action waiver provision.

5  (Doc. No. 11-1 at 4–7.)  Defendant further requests that the court dismiss this action or stay the

6  proceedings pending arbitration.  (*Id.* at 11–12.)  Plaintiff opposes the pending motion on the

7  grounds that he believes the class action waiver provision exempts class actions from the

8  arbitration requirement by its terms.  (Doc. No. 12 at 1–2, 4.)

9  **A.      Validity of the Arbitration Agreement at Issue**

10      1.      The Relevant Sections of the Arbitration Agreement

11          The relevant sections of the arbitration agreement are included here:

12          **BINDING ARBITRATION AGREEMENT**

13  JPMorgan Chase believes that if a dispute related to an employee's or former
employee's employment arises, it is in the best interests of both the individual and
14  JPMorgan Chase to resolve the dispute without litigation.  Most employment
disputes are resolved internally through the Firm's Open Communication Policy.
15  When such disputes are not resolved internally, JPMorgan Chase provides for their
resolution by binding arbitration as described in this Binding Arbitration
16  Agreement ("Agreement").  By signing this Agreement you acknowledge that you
waive your right to bring claims in court or to resolve them before a jury.
17  "JPMorgan Chase" and the "Firm" as used in this Agreement mean JPMorgan
Chase & Co. and all of its direct and indirect subsidiaries.

18
This Agreement will be governed by the Federal Arbitration Act ("FAA"),
19  9 U.S.C. ? 1 [sic] et seq.

20  As a condition of and in consideration of my employment with JPMorgan Chase &
Co. or any of its direct or indirect subsidiaries, I agree with JPMorgan Chase as
21  follows:

22  **1. SCOPE:** Any and all "Covered Claims" (as defined below) between me and
JPMorgan Chase (collectively "Covered Parties" or "Parties", individually each a
23  "Covered Party" or "Party") shall be submitted to and resolved by final and
binding arbitration in accordance with this Agreement.
24
**2. COVERED CLAIMS:** "Covered Claims" include all legally protected
25  employment-related claims, excluding those set forth below in Paragraphs 3 and 4
of this Agreement, that I now have or in the future may have against JPMorgan
26  Chase or its officers, directors, shareholders, employees or agents which arise out
of or relate to my employment or separation from employment with JPMorgan
27  Chase and all legally protected employment-related claims that JPMorgan Chase
has or in the future may have against me, including, but not limited to, claims of
28  employment discrimination or harassment if protected by applicable federal, state

3

1     or local law, and retaliation for raising discrimination or harassment claims, failure
to pay wages, bonuses or other compensation, tortious acts, wrongful, retaliatory

2     and/or constructive discharge, breach of an express or implied contract,
promissory estoppel, unjust enrichment, and violations of any other common law,

3     federal, state, or local statute, ordinance, regulation or public policy, including, but
not limited to Title VII of the Civil Rights Act of 1964, the Civil Rights Acts of

4     1866 and 1991, the Age Discrimination in Employment Act of 1967, the Older
Workers Benefit Protection Act of 1990, the Rehabilitation Act of 1973, the

5     Americans with Disabilities Act of 1990, the Family and Medical Leave Act of
1993, the Fair Labor Standards Act of 1938, the Equal Pay Act of 1963, Section

6     1981 of the Civil Rights Act, and the Worker Adjustment and Retraining
Notification Act.

7                                                       . . .

8     **4. CLASS ACTION/COLLECTIVE ACTION WAIVER:** All Covered Claims
under this Agreement must be submitted on an individual basis.  No claims may be

9     arbitrated on a class or collective basis unless required by applicable law.  Covered
Parties expressly waive any right with respect to any Covered Claims to submit,

10     initiate, or participate in a representative capacity or as a plaintiff, claimant or
member in a class action, collective action, or other representative or joint action,

11     regardless of whether the action is filed in arbitration or in court.  Furthermore, if a
court orders that a class, collective, or other representative or joint action should

12     proceed, in no event will such action proceed in the arbitration forum, subject to
applicable law.  Claims may not be joined or consolidated in arbitration with

13     disputes brought by other individual(s), unless agreed to in writing by all parties or
required by applicable law.  To the extent there is a question of enforceability of

14     class or collective arbitration, it shall be decided only by a court, not an arbitrator.
The arbitrator's authority to resolve disputes and make awards under this

15     Agreement is limited to disputes between: (i) an individual and JPMorgan Chase;
and (ii) the individual and any current or former officers, directors, employees and

16     agents, if such individual is sued for conduct within the scope of their
employment.  No arbitration award or decision will have any preclusive effect as

17     to issues or claims in any dispute with anyone who is not a named party to the
arbitration.  I retain the right to challenge the validity of this Agreement upon

18     grounds that may exist at law or equity and will not be subject to any form of
retaliation for asserting such rights.

19

20   (Doc. No. 11-3 at 12–13.)

21          2.         <u>The Parties Do Not Dispute that a Valid Agreement Exists</u>

22         The court must first determine if a valid arbitration agreement exists.  *Howsam*, 537 U.S.

23 at 84.  Plaintiff does not challenge the validity of the arbitration agreement on any contract

24 formation grounds.  (*See generally* Doc. No. 12.)  Defendant asserts that plaintiff's employment

25 was contingent upon his acceptance of the terms of the arbitration agreement. (Doc. No. 11-1 at

26 2–3.)  Neither party disputes that plaintiff signed the document containing the arbitration

27 agreement, nor do they dispute that plaintiff was employed by defendant for a period of time.

28 (Doc. Nos. 11-1 at 2; 11-3 at 17.)  "[T]he party opposing arbitration bears the burden of proving

1  any defense . . ..” *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017) (quoting

2  *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012)).

3  Plaintiff has not attempted to meet that burden with respect to the validity of the arbitration

4  agreement at issue here.

5        Accordingly, the court finds that the signed arbitration agreement contained in plaintiff's

6  offer letter was validly formed.[2]

7  **B.**      **Whether the Arbitration Agreement Covers This Dispute**

8        The dispute between the parties here is whether the arbitration agreement covers the

9  alleged claims.

10       1.      "Covered Claims" as Defined in the Arbitration Agreement

11       Plaintiff alleges claims for (1) failure to pay wages, (2) failure to provide meal periods,

12 (3) failure to permit rest breaks, (4) failure to provide accurate itemized wage statements,

13 (5) failure to pay all wages due upon separation of employment, and (6) violation of California's

14 Unfair Competition Law.  (*See* Doc. No. 1-1.)  These claims are either specifically delineated in

15 the arbitration agreement (*e.g.,* "failure to pay wages") or are otherwise encompassed by the

16 definition of "Covered Claims" as "all legally protected employment-related claims . . . which

17 arise out of or relate to my employment . . . and violations of any other common law, federal,

18 state, or local statute, ordinance, regulation or public policy . . .."  (Doc. No. 11-3 at 12.)  Plaintiff

19 does not dispute that his claims are of the type that the arbitration agreement covers.  (*See*

20 *generally* Doc. No. 12.)  Thus, the court finds that plaintiff's alleged claims are of the type subject

21 to the parties' arbitration requirement.

22 /////

23

24 [2] The court's finding in this instance is not to be construed as a validation of the entire arbitration
agreement in other contexts not at issue here.  Indeed, as defendant notes, the section of the
25 agreement which prohibits representative actions, such as those brought under California's
Private Attorney General Act ("PAGA"), would not be enforceable under controlling Ninth
26 Circuit law.  (Doc. No. 11-1 at 8 n.2) ("Defendant acknowledges that the currently controlling
case law, *Sakkab v. Luxottica Retail N. Am., Inc.*, 803 F.3d 425, 440 (9th Cir. 2015), precludes
27 them presently from enforcing the representative action waiver in the BAA should Plaintiff
amend his Complaint to assert a representative action claim.").
28

1          2.          Enforceability of the "Class Action/Collective Action Waiver"

2          The arbitration agreement contains a provision entitled "Class Action/Collective Action

3   Waiver." (Doc. No. 11-3 at 13.)  Defendant describes this as a class action waiver, waiving

4   plaintiff's right to bring his claims on behalf of a class.  (Doc. Nos. 11-1 at 8–9; 13 at 2–4.)

5   Plaintiff argues that because the language of the provision states that class claims cannot proceed

6   in arbitration, this provision instead functions as an exception to the arbitration requirement for

7   "Covered Claims," enabling his class claims to proceed before this court because the parties did

8   not agree to arbitrate class claims.  (Doc. No. 12.)

9          By its terms, the arbitration agreement requires this court to determine the enforceability

10   of the "Class Action/Collective Action Waiver" provision in the event of a dispute.  (Doc. No. 11-

11   3 at 13) ("To the extent there is a question of enforceability of class or collective arbitration, it

12   shall be decided only by a court, not an arbitrator.")  In doing so here, the court does not find

13   plaintiff's interpretation of the provision to be plausible.  The court instead finds that the "Class

14   Action/Collective Action Waiver" provision, read together with the definition of "Covered

15   Claims" and the severability clause, does not exclude plaintiff's claims from the *arbitration*

16   *requirement*, it simply prohibits one from bringing "Covered Claims" on behalf of a class *in*

17   *arbitration*.  (*See* Doc. No. 11-3 at 13, 16.)

18          The court must read this provision on its own as well as in context, giving preference to a

19   reasonable interpretation which enables the document to make sense as a whole.  *See United*

20   *States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1135 (E.D. Cal. 2001) ("A written

21   contract must be read as a whole and every part interpreted with reference to the whole, with

22   preference given to reasonable interpretations.").  Here, plaintiff asks the court to find that class

23   actions are categorically excluded from the arbitration requirement because he asserts "Covered

24   Claims" do not include claims in Paragraph 4 and the class action waiver language appears in

25   Paragraph 4.  (Doc. No. 12 at 1–2, 5.)  However, the definition of "Covered Claims" states that

26   "'Covered Claims' include all legally protected employment-related claims, excluding *those* set

27   forth below in Paragraphs 3 and 4 of this Agreement, that I now have or in the future may have

28   against JPMorgan Chase . . .."  (Doc. No. 11-3 at 12) (emphasis added).  A clearly more

1    reasonable reading of that language is that it provides that only those specific claims listed as

2    exclusions in Paragraphs 3 and 4 are excluded from the arbitration requirement, not the entirety of

3    Paragraphs 3 and 4.  This is because the agreement says "excluding *those* set forth in Paragraphs

4    3 and 4 below"—with "those" referring to "Covered Claims"—rather than stating more broadly,

5    "excluding Paragraphs 3 and 4 below," language that would exempt the entire paragraphs.  If the

6    agreement meant for class actions to be excluded categorically, it presumably would have

7    included the "Class Action/Collective Action Waiver" provision in the list of "Excluded Claims"

8    in Paragraph 3.  (*Id*. at 12–13.)

9         Instead, the "Class Action/Collective Action Waiver" provision waives the right to bring

10   claims on a class basis against defendant other than for the limited exception listed, which is what

11   the definition of "Covered Claims" references.  (*Id*. at 13, 16.)  The arbitration agreement permits

12   an employee to bring class claims outside of arbitration if a court finds class treatment is required

13   by law.  (*Id*. at 16.) ("If for any reason the class, collective, or representative or joint action

14   waiver is found to be unenforceable, the class, collective, or representative or joint action may

15   only be heard in court and may not be arbitrated under this Agreement[.]")  Plaintiff does not

16   argue any reason that his claims presented in this action must proceed as a class as a matter of

17   law, and the Supreme Court has held that such class action waivers are enforceable. *Epic Sys.*

18   *Corp*., 138 S. Ct. at 1622–23.

19        Because plaintiff's claims are "Covered Claims" pursuant to the parties' arbitration

20   agreement and because the parties' class action waiver is enforceable, the court is required by the

21   FAA to order plaintiff pursue his claims on an individual basis in arbitration.

22   **C.      The Request for Dismissal or Stay of the Proceedings Pending Arbitration**

23        The court finds that a stay of this action pending the resolution of arbitration is required

24   by the FAA because all of plaintiff's claims are subject to arbitration.  9 U.S.C. § 3.  "A district

25   court 'has the discretion to either stay the case pending arbitration or to dismiss the case if all of

26   the alleged claims are subject to arbitration.'" *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d

27   1070, 1089 (E.D. Cal. 2014) (quoting *Delgadillo v. James McKaone Enters., Inc.,* No. 1:12-cv-

28   /////

1    1149, 2012 WL 4027019, at *3 (E.D. Cal. Sept. 12, 2012)).  Here, the court declines to exercise

2    its discretion to dismiss the action.

3          Accordingly, the court proceedings are stayed pending the resolution of the arbitration.

4                                            **CONCLUSION**

5          For the reasons set forth above:

6          1.     Defendant's motion to compel arbitration on an individual basis (Doc. No. 11) is

7                 granted;

8          2.     This action is stayed pending the resolution of the arbitration and shall be

9                 administratively closed;

10         3.     The parties are ordered to file a joint status report every 90 days as to the status of

11                the arbitration proceedings until such proceedings have been completed; and

12         4.     The parties are ordered to notify the court within 30 days from the date that the

13                arbitration has been completed so that the action may terminated when

14                appropriate.

15    IT IS SO ORDERED.

16       Dated:   **December 18, 2020**                    _____

17                                                    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28